UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HECTOR COLON,

Plaintiff,

v. Case No. 8:24-cv-1453-CPT

MARKWAYNE MULLIN,
SECRETARY OF HOMELAND
SECURITY,[1]

Defendant.
______________________________/

**O R D E R**

Before the Court is the motion for summary judgment filed by Defendant Markwayne Mullin, in his capacity as the Secretary of the Department of Homeland Security (DHS). (Doc. 57). For the reasons discussed below, the Secretary's motion is granted.

I.

Plaintiff Hector Colon was born in Puerto Rico in 1969 and lived there until he was two years old. (Doc. 57-2 at 11). His family then moved to Massachusetts, where they resided for ten years before returning to Puerto Rico. *Id.* Colon remained in

[1] Mr. Mullin became the Secretary of Homeland Security on March 24, 2026. Pursuant to Federal Rule of Civil Procedure 25(d), Mr. Mullin is substituted for the former Secretary, Kristi Noem, as the Defendant in this suit.

Puerto Rico with his family until he graduated from high school in 1987. *Id.* As a result of his time in both the United States and Puerto Rico, Colon is fluent in both English and Spanish. (Doc. 1 at 4).

Upon completing his secondary schooling, Colon enlisted in the U.S. Army and served in active duty for three years. (Doc. 57-2 at 11). Colon then transitioned to the Army Reserves and enrolled in the University of Puerto Rico, where he studied business management. *Id.* at 11, 12. Colon graduated from the University of Puerto Rico in 1994 and returned to active duty with the Army Reserves in Puerto Rico for almost two years. *Id.* at 13.

In 1997, Colon joined the United States Customs Service, *id.* at 10, which was the predecessor to DHS and its subcomponent, the United States Immigration and Customs Enforcement (ICE). *See id.* at 13–14. Over the next roughly twenty-four years, Colon served in a variety of DHS positions, beginning as a customs/special agent in Puerto Rico. *See id.* at 10, 118. Colon then became a U.S. Customs representative at the attaché office in Caracas, Venezuela, which was a GS-13 position,[2] before assuming the position of group supervisor in Houston, Texas. *Id.* at 14, 15.

[2] The General Schedule (GS) pay scale "is used to determine the salaries of most civilian government employees." *Tobey v. U.S. Gen. Servs. Admin.*, 480 F. Supp. 3d 155, 161 n.1 (D.D.C. 2020) (citation omitted). The GS pay scale has fifteen paygrades, with GS-1 being the lowest and GS-15 being the highest. *Id.* The GS-13 is thus the thirteenth paygrade in the GS pay scale. *Id.*

Colon was thereafter appointed to be a unit chief for the Illicit Finance and Proceeds of Crime Unit, a GS-15 position, before assuming another GS-15 position as a unit chief in the Trade Transparency Unit within ICE's headquarters. *Id.* at 16. Colon next served as a Director in the National Targeting Center Investigations Division (NTCID), where he was responsible for providing agency investigative support for United States Customs and Border Patrol (CBP). *See id.* at 17. Colon's pay scale as a NTCID Director was GS-15, *id.* at 19–20, while other NTCID Directors were Senior Executive Service employees (SES).[3] *See id*. The GS-15 position Colon occupied was later upgraded to an SES position. *Id.* at 20.

Between 2013 and 2015, Colon was referred to as a member of the "Puerto Rican mafia" by other DHS employees. *See id.* at 40–47. The term "mafia" was used within DHS as a general way of denoting the geographic areas affiliated with the agency's operatives. *See id.* at 40–41. By way of example, DHS agents from Miami, San Diego, and New York were called the "Miami mafia," the "San Diego mafia," and the "New York mafia," respectively. *Id.*

Following his time with the NTCID, Colon served as the Chief of Staff for the Joint Task Force Investigations at the southern border before being competitively

---

[3] The SES is a class of managerial employees that was created by the Civil Service Reform Act of 1978 and that was designed "to attract and retain highly competent senior executives." *Esparraguera v. Dep't of the Army*, 101 F.4th 28, 31 (D.C. Cir. 2024) (internal quotation marks and citations omitted). As the court noted in *Esparraguera*, "[e]mployees often work decades in the federal government before joining the SES." *Id.*

chosen in 2016 to be the Assistant Special Agent in Charge (ASAC) for the Homeland Security Investigations (HSI) field office in Tampa, Florida. *See id.* at 25–26; *see also* (Doc. 57-3). Colon took the ASAC position on the advice of his mentor as a way of improving his chances of elevating to SES status. (Doc. 57-2 at 26).

Colon was also selected in 2016 to join the SES Career Development Program (SESCDP), which he completed in 2018. (Doc. 1 at 4). SESCDP graduates are eligible (but not entitled) to be selected for non-competitive SES positions. (Doc. 59-2 at 13). Additionally, according to ICE's Acting Deputy Chief Human Capitol Officer and former Chief of ICE's Executive Services Unit, Valerie Sheppard, approximately seventy-five percent of SESCDP graduates within ICE are promoted to SES positions. *Id.* at 49; *see also* (Doc. 59 at 2).[4] While in SESCDP, Colon participated in an SES development assignment, during which time he spent four months as the Acting Executive Director for the United States Customs and Border Protection's Office of Trade. (Doc. 57-2 at 70); (Doc. 57-3 at 2).

From March 2017 until July 2021, Colon applied for at least eleven SES and attaché openings in HSI but was not hired for any of them. (Doc. 1 at 4–5). The positions that Colon sought included Deputy Assistant Director, International Operations in March 2017, May 2019, August 2019, and May 2021, and Special Agent in Charge (SAC) in June 2018, July 2019, and April 2020. (Doc. 57 at 7–8). Colon

[4] Beyond ICE, "the federal average is thirty percent." (Doc. 59-2 at 93–94).

additionally applied for a position as Executive Director, Law Enforcement Sharing Initiative in November 2018, and an attaché position as HSI Supervisory Criminal Investigator in Madrid in February 2021. *See id.*; *see also* (Doc. 1 at 7). According to Colon, he indicated to management "he was interested in applying" for another HSI attaché position in Rome but the spot was filled without being "announced." (Doc. 1 at 5).

A DHS official—John Condon—who was involved in the selection process for at least a portion of the above vacancies offered various reasons why Colon was not chosen for at least some of these positions. These included that Colon was deemed to have performed poorly in an interview because he referred to CBP as a "mistress," and that DHS was looking to give candidates with less overseas experience an opportunity to work in Europe and elsewhere. *See* (Doc. 59-6 at 25, 90, 105); *see also* (Doc. 59 at 7). Colon disputes these claims, stating that he did not make the "mistress" comment (Doc. 59 at 7), and that other DHS officials acknowledged, at a minimum, that some of the personnel picked for these openings already had considerable overseas experience. (Doc. 59-7 at 43–44). Individuals selected to positions for which Colon applied included Erica Petrillo, a former acting Division Chief for HSI in the Eastern Hemisphere, and Davis Magdycz, a former Deputy Assistant Director at HSI. (Doc. 57 at 15); (Doc. 57-9); (Doc. 57-10); (Doc. 59 at 16, 18).

In the midst of Colon seeking these positions, he had a conversation with Condon, during which Condon allegedly told him that DHS thought he was going to

retire soon because employees stationed at the agency's Tampa office typically treated it as their last duty post and finished their careers there. (Doc. 57-2 at 96–97). Colon also alleges that Condon was chosen for an SAC position that Colon was interested in as well. *Id*. at 92–93.

After failing to secure any of the above openings and believing that he had been discriminated against due to his national origin, race, and/or age, Colon contacted ICE's Office of Diversity and Civil Rights on July 19, 2021. (Doc. 57-4). Less than two weeks later, on July 31, 2021, Colon resigned from his ASAC position and retired from DHS. (Doc. 57-2 at 25). Colon was eligible to retire at that point because he was then in his early fifties and had more than twenty years of experience. (Doc. 57 at 19); *see also* (Doc. 59 at 18). If he wished, however, Colon could have remained at DHS until he reached the agency's mandatory retirement age of fifty-seven. (Doc. 57 at 19). Colon declined to do so, however, because he believed that Condon—who he viewed as having acted in a discriminatory fashion towards him—would be his second level supervisor as the SAC of the Tampa field office and that the discrimination against him would thus continue, if not intensify.[5] (Doc. 1 at 5)

In October 2021, Colon filed a formal administrative complaint alleging that DHS negatively treated him based on his national origin, race, and age. (Doc. 57-4 at

---

[5] Condon disputes Colon's characterization of him and maintains that he had a relatively positive view of Colon. Indeed, Condon advised, among other things, that he viewed Colon as a "good worker" and that he tried to help Colon obtain an SES or temporary position to advance Colon's career. (Doc. 59-6 at 74–75).

5–6, 9). He also asserted a claim for constructive discharge on the theory that he was forced to retire because he could not advance at DHS. *See* (Doc. 17-1 at 1, 2). Colon's claims concerning his non-selection for positions between July 2017 and April 2020 were dismissed as untimely at the agency level. *Id.* at 3.

In April 2022, Colon requested a hearing before the Equal Employment Opportunity Commission (EEOC). *See* (Doc. 57-7); *see also* (Doc 1 at 2). During that hearing, the administrative judge indicated that she intended to dismiss Colon's constructive discharge claim on the ground that the EEOC lacked jurisdiction over the claim, which she stated should have been filed with the U.S. Merit Systems Protection Board (MSPB). (Doc. 57-8 at 1–2). In September 2022, Colon voluntarily withdrew his constructive discharge claim from the EEOC. (Doc. 17-2). Following this withdrawal, Colon's discrimination and constructive discharge claims proceeded separately.

In October 2022, DHS issued a final agency decision denying Colon's constructive discharge claim. (Doc. 44-1 at 3). The notice included with this decision instructed Colon that he had the right to (1) appeal the decision to the MSPB within thirty days of receiving the decision; (2) file a civil action in the appropriate district court within thirty days of receipt unless an appeal was filed with the MSPB; and (3) file a civil action 120 days from the date he filed an appeal with the MSPB if the MSPB had not issued a decision. *Id.* at 4. The final agency decision was served on

Colon via email that same day. *Id.* at 14. Colon did not timely pursue any of the rights described in the notice.

In November 2022, Colon moved to stay the EEOC proceedings until he completed his military service. (Doc. 1 at 2). An administrative judge stayed the proceedings until the end of October 2023. *See id*.

In October 2023, Colon—who was still on active duty—renewed his request for a hearing before an EEOC administrative judge. *Id*. Colon thereafter engaged in discovery until February 2024, when the administrative judge again stayed discovery except with respect to a series of depositions which were scheduled to take place the next week. (Doc. 50-1 at 1). Nevertheless, in an Order issued later in February 2024, the administrative judge directed that the parties further brief the matter of the stay given concerns that DHS raised regarding its ability to preserve evidence during another delay in the proceedings. *Id.* at 3.

In June 2024, Colon commenced this action by filing a two-count complaint, in which he averred that DHS and its employees engaged in a continual pattern and practice of discrimination against him predicated on his national origin and age in violation of Title VII of the Civil Rights Act of 1964, as amended (Title VII), and the Age Discrimination in Employment Act (ADEA). (Doc. 1).[6] In support of these allegations, Colon identified in his complaint eleven positions that he unsuccessfully

[6] As a result of Colon bringing this suit, the EEOC administrative judge dismissed the complaint in the administrative proceedings. (Docs. 44-4, 44-5).

pursued between March 2017 and July 2021 (many of which are referenced above) despite supposedly being the most qualified candidate. *Id*. at 4–5. Colon also alleged in his complaint, inter alia, that he "involuntarily retired" (i.e., was constructively discharged) from DHS because he "could not work in such a discriminatory and hostile work environment." *Id*. at 5.

Several months after the parties completed discovery in this action, the government timely filed the instant motion for summary judgment. (Doc. 57). Colon responded in opposition to the government's motion (Doc. 59), to which the government replied (Doc. 65). Of import here, Colon clarified in his response that he was not asserting a claim of national origin or age discrimination relative to the HSI attaché position in Rome and the Deputy Assistant Director position for which he applied in March 2017. *See* (Doc. 59 at 12 n.12); *see also* (Doc. 57 at 7–8). He also clarified that he was not pursuing a claim of age discrimination concerning the SAC positions for which he applied in June 2018, July 2019, and April 2020, as well as the Executive Director position for which he applied in November 2018, and the Deputy Assistant Director positions for which he applied in May 2019 and August 2019. *See* (Doc. 59 at 12 n.12); *see also* (Doc. 57 at 7). With these clarifications and the parties' submissions, the matter is now ripe for the Court's consideration.

II.

Summary judgment is warranted when the movant can show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

*Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1356 (11th Cir. 2007) (citing Fed. R. Civ. P. 56(c)). "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (quoting *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004)). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id*.

If a moving party makes the requisite showing, the non-movant must then designate specific material facts—through affidavits, depositions, answers to interrogatories, and/or admissions on file—that are contested for trial. *See Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006) (citation omitted); *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value.") (citations omitted). If a party fails to properly buttress "an assertion of fact or fails to properly address another party's assertion of fact," a court may "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to" the sought-after relief. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, a court must view the evidence in the light most favorable to the non-movant. *Welding Servs.*, 509 F.3d at 1356. That is, it must credit the evidence tendered by the non-movant and draw all justifiable inferences in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted). In doing so, a court may not "weigh conflicting evidence or make

credibility determinations" regarding a party or its presentation of the facts. *Wate v. Kubler*, 839 F.3d 1012, 1018 (11th Cir. 2016) (citations omitted).

III.

A.

The Secretary first contends that he is entitled to summary judgment on Colon's national origin and ADEA claims relating to the denied promotions between March 2017 and April 2020 because Colon did not timely contact an Equal Employment Opportunity (EEO) counselor about those denials. (Doc. 57 at 8). While not disputing that he failed to report the alleged discrimination to an EEO counselor within the requisite period, Colon maintains that he was not obligated to do so because DHS's discriminatory conduct constituted a "continuing violation" which did not conclude until much later. (Doc. 59 at 12–14). Colon's continuing violation theory does not survive scrutiny.

It is well settled that as a pre-condition for bringing a discrimination claim, "federal employees must seek relief from the agency where the alleged discrimination occurred." *Jimenez v. U.S. Att'y Gen.*, 146 F.4th 972, 988 (11th Cir. 2025) (citing 29 U.S.C. § 794a(a)(1); 42 U.S.C. § 2000e-16(b)–(c); 29 C.F.R. § 1614.105(a)(1)). This exhaustion requirement affords the agency an opportunity to investigate the claim internally and attempt to dispose of it informally. *Id*. at 988–89 (citing *Ramirez v. Sec'y, U.S. Dep't of Transp.*, 686 F.3d 1239, 1243 (11th Cir. 2012)).

The exhaustion framework applicable here requires a federal employee who believes he has been the victim of discrimination to "'initiate contact' with an EEO counselor at his agency 'within [forty-five] days of the date of the matter alleged to be discriminatory,' or if the claim involves a 'personnel action,' within forty-five days of the effective date of the action." *Id*. at 989 (quoting 29 C.F.R. § 1614.105(a)(1)). The forty-five-day deadline "functions like a statute of limitations" and "begins running for each discrimination claim when that claim accrues." *Id*. (citing *Hogan v. Sec'y, U.S. Dep't of Veterans Affs*., 121 F.4th 172, 177 (11th Cir. 2024); *Green v. Brennan*, 578 U.S. 547, 563 (2016)) (internal quotation marks omitted). An employee who does not comply with this forty-five-day charging window is generally deemed to be barred from bringing his claim in federal court. *Id*. (citing *Shiver v. Chertoff*, 549 F.3d 1342, 1344 (11th Cir. 2008) (per curiam)).

The forty-five-day limitations period, however, admits of a few exceptions. *See id*. These include the doctrines of "waiver, estoppel, and equitable tolling." *Id*. (quoting *Hogan*, 121 F.4th at 177); *see also* 29 C.F.R. § 1614.105(a)(2) (extending the deadline where an employee shows that he "did not know and reasonably should not have . . . known that the discriminatory matter" took place).

The continuing violation doctrine upon which Colon relies is premised on "the equitable notion that the statute of limitations ought not to begin to run until facts supportive of the cause of action are or should be apparent." *Hipp v. Liberty Nat'l Life Ins*., 252 F.3d 1208, 1222 (11th Cir. 2001) (per curiam) (internal quotation marks and

citation omitted). Under this doctrine, a plaintiff may proceed on otherwise time-barred claims if the "defendant's action violate[d the] plaintiff's rights on a repeated or ongoing basis." *Jimenez*, 146 F.4th at 992 (quoting *Doe ex rel. Doe #6 v. Swearingen*, 51 F.4th 1295, 1305 (11th Cir. 2022)).

To qualify as a continuing violation, the illicit conduct at issue must constitute "a single violation of an ongoing nature" and not simply "a series of repeated violations that result in related harms." *Doe*, 51 F.4th at 1306 (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 112, 113 (2002)). Accordingly, when a defendant engages in individualized acts that contravene the law, the continuing violation doctrine does not apply. *Id.* (citing *Knight v. Columbus*, 19 F.3d 579, 580–82 (11th Cir. 1994)). As the Eleventh Circuit explained in *Jimenez*:

> Determining whether an employee's charge is timely . . . requires identifying precisely the unlawful employment practice of which he complains. Each discrete adverse employment decision . . . is a separate actionable unlawful employment practice that starts a new clock for filing charges alleging that act. Discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.

146 F.4th at 992 (internal quotation marks and citations omitted). This distinction between discrete and non-discrete acts applies to both national origin and ADEA claims. *See Jimenez*, 146 F.4th at 992–93; *Smithers v. Wynne*, 319 F. App'x 755, 757 (11th Cir. 2008) (per curiam)[7] (observing in an ADEA action that discrete acts were

---

[7] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority.

not part of a continuing violation) (citing *Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 550 U.S. 618, 636–37 (2007)); *Marquez v. Costco Wholesale Corp.,* 550 F. Supp. 3d 1256, 1273 (S.D. Fla. 2021) (noting in an ADEA case that "discrete discriminatory acts . . . cannot form the basis of a continuing violation").

The gist of Colon's continuing violation argument is that each of the time-barred failures to promote listed in his complaint were part of a broader hostile work environment and are thus actionable as long as at least one of the failures to promote fall within the forty-five-day time frame. (Doc. at 12–14). The flaw in this argument is that it ignores the fact that each of the challenged employment decisions "was a separate, actionable," and discrete act. *Jimenez*, 146 F.4th at 994. Indeed, as the Eleventh Circuit noted in *Jimenez*, an alleged "failure to promote is easy to identify as a discrete discriminatory act" because it has "immediate consequences" and does not "depend upon proof of repeated conduct extending over a period of time." *Id*. at 994 (citing *Morgan*, 536 U.S. at 114, 115–16, 120 n.12) (internal quotation marks omitted); *see also Stuart v. Jefferson Cnty. Dep't of Hum. Res.*, 152 F. App'x 798, 800–01 (11th Cir. 2005) ("An employer's failure to promote is a discrete act or single occurrence and therefore the continuing violation doctrine does not apply."). As a result, such discrete acts are deemed to "occur[ ] on the day [they] happened" and "start a new clock for

11th Cir. R. 36-2.

filing charges alleging that act." *Jimenez*, 146 F.4th at 994 (citing *Morgan*, 536 U.S. at 113) (internal quotation marks omitted).

Colon cannot now invoke the continuing violation doctrine to evade this time bar merely by bundling these discrete acts together under a hostile work environment theory.[8] Putting aside for the moment that Colon's complaint does not contain a hostile work environment count, the Eleventh Circuit instructed in *Jimenez* that "[c]laims of discrimination based on independent discriminatory acts cannot be aggregated to extend the limitations period." *Id*. at 992 (quoting *Green*, 578 U.S. at 562 n.7); *see also id*. ("The continuing violation doctrine cannot convert related discrete acts into a single unlawful practice for purposes of timely filing.") (citing *Morgan*, 536 U.S. at 111) (internal quotation marks omitted). In the Court's view, that is precisely what Colon is seeking to do here.

In short, Colon had a "complete and present cause of action" when the challenged discrete failures to promote took place and the "forty-five-day clock [therefore] began running" as of that time. *Id*. at 994; *see also id.* at 992 (stating that discrete acts include "failure[s] to promote"); *Smithers*, 319 F. App'x at 757 ("[W]e conclude as a matter of law, that [a federal employee's] claims of being passed over for promotion are allegations of discrete acts"). By failing to timely pursue these

[8] Unlike claims grounded on a discrete act, hostile work environment claims are "continuing by their very nature" and are "only actionable due to their cumulative effect." *See Jimenez*, 146 F.4th at 993–94 (citing *Morgan*, 536 U.S. at 111, 115–17) (internal quotation marks omitted).

personnel actions within that period, he has "lost the ability to recover for them." *Id.*; *see also Chambless v. Louisiana-Pac. Corp.*, 481 F.3d 1345, 1349 (11th Cir. 2007) ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges") (quoting *Morgan*, 536 U.S. at 113); *Underwood v. Tory Burch LLC*, 2024 WL 6473740, at *5 (N.D. Ga. Sept. 27, 2024) ("[T]imely non-discrete . . . acts cannot save untimely discrete acts.") (citing *Chambless*, 481 F.3d at 1350; *Morgan*, 536 U.S. at 113), *report and recommendation adopted*, 2024 WL 6473742 (N.D. Ga. Nov. 1, 2024).

Colon's reliance on the Eleventh Circuit's decision in *Chambless* is misplaced. (Doc 59 at 13). In *Chambless*, the court observed that "where discrete and non-discrete acts make up a hostile work environment claim, the pivotal question is whether the timely discrete acts are sufficiently related to the hostile work environment claim." *Id.* (internal quotation marks and citations omitted). This inquiry, however, presupposes that the discrete acts in question are timely in the first place. For the reasons stated above, they are not here.

The Secretary also argues that to the extent Colon's complaint can be construed as asserting a constructive discharge claim,[9] that claim is time barred too because it was not filed within thirty days of Colon's receipt of the agency's October 2022 final

---

[9] The Court addresses the procedural and substantive flaws with Colon's putative constructive discharge claim below.

decision on the matter, as required by 29 C.F.R. § 1614.310(a). (Doc. 57 at 22–23). The Court is not convinced.

While Colon concedes that he did not bring a constructive discharge claim in federal court within the thirty-day window, he maintains that the Service Member's Civil Relief Act (SMCRA), 50 U.S.C. § 3936(a), tolled this period since he was on active duty in the U.S. Army from October 2022[10] through at least the initiation of this action. (Doc. 59 at 18–19). The SMCRA states, in relevant part:

> The period of a servicemember's military service may not be included in computing any period limited by law, regulation, or order for the bringing of any action or proceeding in a court, or in any board, bureau, commission, department, or other agency of a State (or political subdivision of a State) or the United States by or against the servicemember or the servicemember's heirs, executors, administrators, or assigns.

50 U.S.C. § 3936(a).

On its face, the statute appears to render Colon's purported constructive discharge claim timely. Other courts in this Circuit and elsewhere have tolled claims under similar circumstances or at least have not found such tolling objectionable. *See, e.g., Cook v. Chapel Hills Cmty. Ass'n, Inc.*, 2022 WL 1647212, at *2 (N.D. Ala. May 24, 2022); *Larumbe v. Austin*, 2023 WL 7156529, at *4 (D.D.C. Oct. 31, 2023) ("[T]he ordinary meaning of 50 U.S.C. § 3936 [on tolling] applies to [the plaintiff's] claim

---

[10] Confusingly, Colon's summary judgment response states that he was called to active duty in early November 2022 as well. (Doc. 59 at 19). The Court cannot reconcile these different active-duty dates and assumes, without deciding, that the earlier date is correct.

because [the plaintiff] filed [his] claim during the period of [his] military service."). Although the Secretary contends that the SMCRA "does not provide automatic relief" (Doc. 57 at 23), the cases he cites in support of this proposition are distinguishable, insofar as they primarily deal with stays as opposed to tolling, and neither seems to rely on 50 U.S.C. § 3936(a). *See Klunder v. Brown Univ., C.A.*, 2013 WL 12316341 at *1 (D.R.I. Jan. 3, 2013); *Santana-Archivald v. Banco Popular de Puerto Rico*, 2012 WL 2359432, at *3 (D.P.R. June 19, 2012).

B.

The Secretary additionally seeks summary judgment relative to Colon's remaining non-time barred claims, all of which concern the positions he applied for in 2021. In support of this request, the Secretary argues that Colon does not show he was passed over for any of these openings because of unlawful discrimination. (Doc. 57 at 11). Colon counters that he tenders adequate evidence demonstrating "discrimination played a part in the[se challenged] adverse employment decisions." (Doc. 59 at 14).

The Court begins its analysis with Colon's timely national origin claims under Title VII. Where, as here, a defendant moves for summary judgment on counts brought pursuant to Title VII, a plaintiff can defeat the motion by (1) presenting direct evidence of discriminatory intent; (2) satisfying the burden shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); or (3) marshaling a "convincing mosaic" of circumstantial evidence that creates an inference of intentional

discrimination. *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1220 & n.6 (11th Cir. 2019) (en banc) (*Lewis I*).

Here, Colon elects to rely on the convincing mosaic approach.[11] *See* (Doc. 59 at 14). To succeed on this theory, a plaintiff such as Colon "must present a story, supported by evidence, that would allow a reasonable jury to find" the government engaged in intentional discrimination prohibited by Title VII. *Berry v. Crestwood Healthcare LP,* 84 F.4th 1300, 1311 (11th Cir. 2023); *see also McCreight v. AuburnBank*, 117 F.4th 1322, 1335 (11th Cir. 2024) (finding a less "poetic" description of the "convincing mosaic" to be "enough evidence to allow a jury to infer intentional discrimination")) (internal quotation marks and citation omitted). A plaintiff may accomplish this goal by producing testimony and exhibits that constitute or demonstrate, among other things, "(1) suspicious timing, ambiguous statements, and other bits and pieces from which an inference of discriminatory intent might be drawn[;] (2) systematically better treatment of similarly situated employees[;] and (3) that the employer's justification is pretextual." *Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019) (*Lewis II*) (cleaned up); *see also Burge v. Sheriff of Manatee Cnty. Fla.*, No. 25-14412, at *3–4 (11th Cir. 2026) (same); *DeMartino v. Empire Holdings*

[11] Even if Colon chose one of the other options, it would not make a difference. Based on the below-referenced evidence and arguments presented by Colon, he does not offer direct evidence of discriminatory intent, nor does he satisfy the *McConnell Douglas* burden shifting framework, which—it is worth noting—has an "identical . . . final stage" to the convincing mosaic inquiry. *Ossmann v. Meredith Corp.*, 82 F.4th 1007, 1020 (11th Cir. 2023) (citing *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1326, 1328 (11th Cir. 2011)).

*& Invs., LLC*, 2024 WL 726895, at *2 (S.D. Fla. Feb. 22, 2024) (observing that the three types of circumstantial evidence referenced in *Lewis II* are not "essential, prerequisite elements" but merely "provide[ ] guiding categories of evidence likely to be probative of discrimination") (citing *Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 946 n.2) (11th Cir. 2023)) (internal quotation marks omitted). In pursuing these evidentiary threads, however, a plaintiff must "present the tiles and create the mosaic [rather than] expect[ ] the court to piece it together for him." *Murphree v. Colvin*, 2015 WL 631185, at *8 (N.D. Ala. Feb. 13, 2015). Further, while a court "must view the evidence in the light most favorable to the [plaintiff] and draw all reasonable inferences in [his] favor," *Berry*, 84 F.4th at 1311 (citation omitted), such inferences must "be based only on evidence—not on speculation," *Martin v. Fin. Asset Mgmt. Sys., Inc.*, 959 F.3d 1048, 1058 (11th Cir. 2020).

In the end, the Eleventh Circuit has stressed that the convincing evidence standard is properly understood as "a metaphor, not a legal test and not a framework" regardless of how a plaintiff packages his circumstantial evidence. *Berry*, 84 F.4th at 1311 (citation omitted). And if the evidence is "unconvincing" to a court after reviewing the "totality of circumstances," it cannot sustain a valid mosaic. *See Poer v. Jefferson Cnty. Comm'n*, 100 F.4th 1325, 1339 (11th Cir. 2024).

Colon grounds his convincing mosaic theory, at least in part, on being referred to as a member of the "Puerto Rican mafia" while working at DHS. (Doc. 59 at 14). He maintains that the use of this moniker showed his colleagues and supervisors were

"aware of his ethnicity" and that he began to "suspect" the term was meant to be derogatory after he was rejected for multiple positions. (Doc. 59 at 14–15); *see also* (Doc. 57-2 at 44–45).

Colon's argument is unpersuasive. To start, the record reveals that the last time Colon was characterized as belonging to the "Puerto Rican mafia" was in or around December 2015, which was roughly six years before the non-selections in 2021 occurred. *See* (Doc. 57 at 13); (Doc. 57-2 at 46–47). While by no means dispositive, *see Jenkins v. Nell*, 26 F.4th 1243, 1251 (11th Cir. 2022), the passage of such a substantial amount of time between the use of this phrase and the challenged actions suggests that the two are not linked.

Irrespective of this temporal gap, the evidence also demonstrates that the descriptor, "mafia," was used in a non-discriminatory manner with respect to other groups of individuals at DHS besides those who were from Puerto Rico. Those groups included—as detailed previously—the "Miami mafia," the "San Diego mafia," and the "New York mafia." (Doc. 57-2 at 40–41). These latter monikers had nothing to do with the national origin of the employees to whom they referred, and Colon acknowledges as much. Indeed, he admitted during his deposition that the term "mafia" was employed simply to indicate the cities, states, etc. with which these DHS personnel were associated. *See id.* at 40–41, 43; *see also Gray v. City of Evergreen, Ala.*, 2025 WL 2024504, at *7 (S.D. Ala. Jul. 18, 2025) (stating that in order for a general comment to constitute circumstantial evidence of a "decisionmaker's discriminatory

attitude," it must be "read in conjunction with the entire record") (quoting *Ross v. Rhodes Furniture, Inc.*, 146 F.3d 1286, 1291 (11th Cir. 1998)) (internal quotation marks omitted).

Colon advances as an additional tile in his mosaic relative to the non-time-barred claims that similarly situated employees at DHS were treated better than he was. *See* (Doc. 59 at 15–16); *see also Lewis II*, 934 F.3d at 1185. Colon, however, explicitly identifies only a single such comparator, Erica Petrillo, who he notes applied for one of the same positions in 2021 as he did. (Doc. 59 at 16). The standard for a comparator is more demanding than Colon makes it out to be.

Under Eleventh Circuit precedent, a proper comparator is one who is "similarly situated in *all material respects*" and "typically will have engaged in the same basic conduct; . . . be subject to the same employment policy, guideline, or rule; have the same supervisor(s); or share the plaintiff's employment or disciplinary history." *Jimenez*, 146 F.4th at 996 (emphasis added) (internal quotation marks and citations omitted).[12] As the government points out, Petrillo does not meet this robust test because her professional experience and employment history are substantially

[12] The Eleventh Circuit has recently stated that "some factual differences" between putative comparator(s) may be acceptable, but the comparator evidence "must still support a reasonable inference of discriminatory intent." *Burge*, No. 25-14412, at *6–7 (quoting *Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 2026 WL 2617822, at *7 (11th Cir. Sept. 4, 2026)). For the reasons discussed throughout this decision, Colon has not proffered any meaningful evidence that would support such an inference, and the significant distinctions between him and possible comparators are sufficient to buttress a finding of summary judgment. *See id.*

dissimilar to Colon's.[13] (Doc. 57 at 15–17); *compare* (Doc. 57-3) *with* (Doc. 57-9). The same can be said of other DHS employees who Colon mentions in his response (albeit without expressly designating them as comparators). (Doc. 57 at 15–17); *compare* (Doc. 57-3), *with* (Doc. 57-10). And "[a]n employer is well within its rights to accord different treatment to employees who are differently situated in material respects[, including those with] . . . different work histories." *Lewis I*, 918 F.3d at 1229.[14]

The last element of Colon's convincing mosaic is that DHS's proffered justifications for denying him the sought-after openings in 2021 were pretextual. *See* (Doc. 59 at 17). To bolster this contention, Colon puts forth evidence that he was advised by DHS officials that he was not selected for foreign postings because the agency was supposedly looking to staff them with individuals with no overseas experience, which Colon already possessed, but then went ahead and chose applicants with such experience anyway. *See* (Doc. 59 at 7–8); *see also* (Doc. 59-7 at 43–44). The Secretary counters that Colon was not awarded at least one of these slots because he performed poorly in the interview by referring to CBP as a "mistress" (Doc. 59-6 at

---

[13] The government posits that Colon's failure to establish a valid comparator is fatal to his convincing mosaic theory. (Doc. 57 at 14–17). While the Court is skeptical of this assertion, *see Bailey v. Metro Ambulance Servs., Inc.*, 992 F.3d 1265, 1273 n.1 (11th Cir. 2021) (per curiam); *DeMartino*, 2024 WL 726895, at *2, the Court need not resolve this issue since Colon's convincing mosaic theory falters for the other reasons set forth herein.

[14] Colon briefly mentioned in his deposition that other DHS employees may have told him they were discriminated against based on their national origin. *See* (Doc. 57-2 at 185–88). Such hearsay is inadmissible, however, and Colon notably does not tender any sworn testimony or declarations from these individuals which would show that they would have admissible evidence to offer at a trial.

105), a contention which Colon disputes (Doc. 57-2 at 127). Colon does admit though that a number of the successful applicants for overseas positions akin to the position in Madrid were Hispanic. *See* (Doc. 57-2 at 170–73).

Even assuming arguendo that Colon demonstrates DHS's explanations for the denied promotions were false, his pretext argument nonetheless fails. It is well settled that a plaintiff relying on a pretext theory must show not only that the employer's claimed reason was false, but also that the real purpose was discrimination. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) ("[A] reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason.") (internal quotation marks omitted); *Thomas v. Sheriff of Jefferson Cnty., Ala.*, 2023 WL 6534602, at *6 (11th Cir. Oct. 6, 2023) ("[E]stablishing pretext alone is not enough for a plaintiff to survive summary judgment: a reason is not pretext for discrimination unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.") (citing *Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007)) (internal quotation marks omitted); *Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (same) (citation omitted).

Colon does not make such a showing here. In his submissions, the Secretary marshals persuasive evidence demonstrating that the individuals Colon identifies who were awarded the positions over him were well-qualified for those jobs. By way of example, before beating out Colon for the Madrid opening, Petrillo held the title of

Acting Division Chief of HSI International Operations, which even Colon conceded in his deposition was a senior position with considerable leadership responsibility. *See* (Doc. 57 at 15); (Doc. 57-12 at 59); *see also* (Doc. 57-2 at 31–33); (Doc. 57-9); (Doc. 57-3).[15] Colon does not meaningfully address Petrillo's impressive bona-fides in his responsive brief, nor does he confront the formidable credentials of other applicants to whom he lost out. *See* (Doc. 59); *see also* (Doc. 57-9); (Doc. 57-10).[16] This deficiency is significant. As the Eleventh Circuit has explained:

> In a failure to promote case, a plaintiff cannot prove pretext by simply showing that [he] was better qualified than the individual who received the position that [he] wanted. . . . Disparities in qualifications are not enough in and of themselves to demonstrate discriminatory intent unless those disparities are *so apparent as virtually to jump off the page and slap you in the face*.

*Denney v. City of Albany*, 247 F.3d 1172, 1187 (11th Cir. 2001) (emphasis added) (quoting *Lee v. GTE Fla., Inc.,* 226 F.3d 1249, 1253–54 (11th Cir. 2000)) (internal quotation marks omitted).[17] Whatever material differences there are between Colon's

---

[15] According to David Magdycz, who was apparently at least somewhat involved in the hiring process for the Madrid position, Petrillo gave an excellent interview in advance of her selection as well. *See* (Doc. 59-6 at 60).

[16] The record evidence indicates that Colon did not submit all the necessary paperwork for the Deputy Assistant Director International Operations opening which he sought to fill in May 2021. (Doc. 65-1 at 10–11); (Doc. 65-2 at 5); (Doc. 59-2 at 40). While Colon seems to dispute this in his deposition (Doc. 57-2 at 104–05), he did admit that he believed the incident may have been a "technical glitch," *id*. at 107, 112–13.

[17] This elevated standard reflects the reality that courts are not human resources professionals equipped with the requisite expertise to discern the most qualified applicant. *See Denney*, 247 F.3d at 1188 (citation omitted). As a result, absent an unlawful motive, it is not the role of the courts to make hiring decisions for employers. *Id*. (citation omitted).

background and the backgrounds of the candidates who bested him, those distinctions do not "jump off the page and slap [one] in the face[.]" *Id.*; *see also Lee*, 226 F.3d at 1254 ("[J]ump off the page and slap [you] in the face . . . mean[s] that disparities in qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.") (internal quotation marks and citation omitted).

In sum, the Court finds that Colon does not put forth a "convincing mosaic" of circumstantial evidence concerning the denied promotions in 2021 which creates an inference of intentional discrimination based on his national origin. Accordingly, the Secretary is entitled to summary judgment on these allegedly discriminatory acts as well.

C.

Having disposed of Colon's Title VII claim, the Court turns its attention to his ADEA claim pertaining to the 2021 openings. To defeat the Secretary's summary judgment motion on this claim, Colon again proceeds under a convincing mosaic theory, which the law permits him to do. *See Sims v. MVM, Inc.*, 704 F.3d 1327, 1333 (11th Cir. 2013) ('[A] plaintiff [in an ADEA case] will always survive summary judgment if he presents . . . a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.") (internal quotation marks and citation omitted); *see also Tsavaris v. Savannah L. Sch., LLC*, 847 F. App'x 634, 637 (11th Cir. 2021) (same).

Colon's purported mosaic appears to be that the employees who were picked to fill the contested vacancies were younger than but inferior to him, that DHS personnel made comments to him in 2021 which evidenced that "age played a part in [Colon's] non-selection[s]," and that DHS's proffered justifications for making these challenged hiring determinations were pretextual. (Doc. 59 at 10–12, 17–18). Unfortunately for Colon, these elements are unavailing for the many of the same reasons as those discussed in connection with his timely national origin claims.[18]

To begin, as with Colon's Title VII claims, he does not meaningfully address the substantial qualifications of the candidates who were chosen instead of him. And with respect to his pretext argument, Colon again fails to make the requisite showing that even assuming DHS's stated reasons for the denied promotions were false, the actual motivation was discriminatory. As the Eleventh Circuit emphasized in addressing a similar situation in an ADEA action a few years back:

> The strongest evidence for [the plaintiff] still only gets her halfway there. . . . [That evidence] is strong evidence that [the defendant's] proffered explanation is [false]. . . . However, the evidence is insufficient for a jury to make the further inference that [the plaintiff's] age, rather than some other factor, was the reason for her termination. . . . A reason is not pretext for discrimination unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.

[18] Colon similarly does not present direct evidence of discriminatory intent for his ADEA claims, nor do his ADEA claims pass muster under the *McConnell Douglas* burden shifting framework, which again has an "identical . . . final stage" to the convincing mosaic inquiry. *Ossmann*, 82 F.4th at 1020 (citing *Smith*, 644 F.3d at 1326, 1328).

*Tsavaris*, 847 F. App'x at 642 (internal quotation marks and citation omitted).

As for the allegedly age discriminatory remarks, Colon points only to the single conversation between Condon and Colon, in which Condon referenced DHS's impression that Colon was retiring soon and that he intended to finish his career with the agency at his last position in Tampa. *See* (Doc. 57-2 at 95–98). These comments do not provide an adequate basis to infer intentional age discrimination.

While "discriminatory remarks" can "demonstrate pretext," they do so by "shed[ding] light on the decision maker's state of mind at the time that he made the challenged employment decision." *Ritchie v. Indus. Steel*, 426 F. App'x. 867, 872–73 (11th Cir. 2011) (citing *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1362 (11th Cir. 1999)) (internal quotation marks omitted). Here, there is undisputed evidence that one of the individuals who was selected in lieu of Colon for the Deputy Assistant Director, International Operations opening in 2021, David Magdycz, was only roughly a year younger than Colon, and—as Colon seemingly acknowledged in his deposition—was also retirement-eligible when he was awarded the position. (Doc. 57-2 at 99–100). This evidence undermines Colon's assertion that, to the extent Condon was involved in any of the challenged selection decisions, his state of mind was focused on Colon's age. This is especially true since Condon never actually discussed Colon's age in their conversation and instead spoke more in terms of the nature of Colon's future plans. *Id.* at 97–98. In fact, Colon admitted in his deposition that, in this same conversation, Condon offered to assist Colon in securing a position

somewhere else, which further detracts from Colon's contention that Condon was acting with a discriminatory intent. *Id.* at 100–01. It is noteworthy in this respect that although Colon no longer includes the Rome position as part of his ADEA claim, he concedes that the person hired for that spot was either his age or "older." *Id.* at 179–80.

Colon's reliance on the Condon conversation suffers from another infirmity as well. Not only are Condon's comments substantively insufficient for purposes of Colon's convincing mosaic theory, but they were also made in a lone, isolated exchange with Colon. *See McCreight*, 117 F.4th at 1339 (11th Cir. 2024) (finding in an ADEA case that "stray comments alone are not enough to overcome the summary judgment standard" even when part of a broader mosaic) (citation omitted).

In sum, Colon's ADEA claim concerning the 2021 postings fails. As a result, the Secretary is entitled to summary judgment on this claim too.

D.

To avoid a dismissal of this action, Colon now suggests—as alluded to earlier—that his complaint includes hostile work environment and constructive discharge claims as well. *See* (Doc. 59 at 12). In support, Colon avers that he was subjected to a hostile work environment "in the final three years of his long career because[, as a result] of his national origin and age[,] he was not and would not be considered for any positions or job[s] that would enable him to be an SES." *Id.* at 13. Colon further avers, inter alia, that this discriminatory and hostile work environment—as referenced

previously—caused him to "involuntarily retire[ ] from DHS." (Doc. 1 at 5). This attempt by Colon to keep his case alive is unavailing.

As an initial matter, Colon only mentions in passing in his complaint that DHS's allegedly discriminatory conduct purportedly contributed to a hostile work environment (Doc. 1 at 5), and he does not assert a separate count dedicated to such a claim. And while he does reference in his complaint that he involuntarily retired (Doc. 1 at 6, 7), he does not assert a separate constructive discharge count either. *See Desravines v. Orange Cnty. Sheriff's Off.*, 520 F. App'x 946, 948 (11th Cir. 2013) (deeming a claim which was not included as a count in the plaintiff's operative complaint as not being "before the district court"); *see also Irola & CIA, S.A. v. Kimberly-Clark Corp.*, 325 F.3d 1274, 1286 (11th Cir. 2003) (ruling that claims not raised in a complaint could not be asserted for the first time in a plaintiff's response to a defendant's summary judgment motion).

Irrespective of this deficiency, Colon does not properly address the merits of his purported hostile work environment and constructive discharge claims in his response to the Secretary's summary judgment motion and instead discusses them solely in the limited context of the timeliness of his national origin and age discrimination counts. (Doc. 59 at 12–14). Accordingly, Colon has arguably waived his right to pursue either of these claims. *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support of an issue waives it."); *Hibbett Retail, Inc. v. TCH Dev., Inc.*, 2025 WL 73253, at *13 (N.D. Ala.

Jan. 10, 2025) ("Numerous cases indicate that the burden rests on the parties to present arguments to the court, and that issues not substantively and meaningfully argued are waived.") (collecting cases).

In addition to these procedural issues, Colon's supposed hostile work environment and constructive discharge claims are substantively wanting. As to the former claim, Colon must show:

> (1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment . . . [was premised] on a protected characteristic of the employee, such as national origin; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability.

*Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002) (citation omitted). Notably, Colon does not specify in his response how he meets each of these elements under the governing law.[19] Nor is it the Court's role to do so for him. *See*

---

[19] By way of example, for the claimed harassment to be sufficiently severe or pervasive, Colon must prove, among other things, that the conduct leading to the hostile work environment was "objectively hostile." *Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1249 (11th Cir. 2014). The factors that courts consider in evaluating this question are "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Id.* at 1250–51 (internal quotation marks and citation omitted). Colon does not mention these factors in his response, much less show—with citations to the relevant case authority—how they led to an objectively hostile work environment in this case. *Cf. Thompson v. Sec'y, U.S. Dep't of Veterans Affs.*, 801 F. App'x 688, 693–94 (11th Cir. 2020) (stating that actions relating to "the stuff of ordinary office life" are not "sufficiently severe and pervasive harassment") (internal quotation marks and citations omitted); *Houston v. R.T.G. Furniture Corp.*, 2024 WL 37740, at *11 (M.D. Fla. Jan. 3, 2024) (finding isolated remarks insufficient to show objective hostility).

*Murphree*, 2015 WL 631185, at *8 ("The [c]ourt does not bear the burden of discerning . . . evidence [of discrimination] for [a plaintiff.]") (citation omitted); *King v. ST Aerospace Mobile, Inc.*, 2013 WL 2635926, at *7 n.14 (S.D. Ala. June 11, 2013) ("This [c]ourt will not develop a litigant's summary judgment argument for him.") (collecting cases); *see also Case v. Eslinger,* 555 F.3d 1317, 1329 (11th Cir. 2009) ("A party cannot readily complain about the entry of a summary judgment order that did not consider an argument they chose not to develop for the district court at the time of the summary judgment motion[.]") (internal quotation marks and citation omitted).

Given Colon's failure to address these elements and given that the Court has already determined that he has not shown enough for a jury to infer discriminatory intent, the Court finds that he does not satisfy the requirements for a hostile work environment claim. *See Harris v. Pub. Health Tr. of Miami-Dade Cnty.*, 82 F.4th 1296, 1304 (11th Cir. 2023) ("[The plaintiff] must ultimately show that but for the fact of [his protected characteristic], [he] would not have been the object of the actions that collectively constitute [his] hostile-work-environment claim.") (internal quotation marks and citations omitted); *Tonkyro v. Sec'y, Dep't of Veterans Affs.*, 995 F.3d 828, 836 (11th Cir. 2021) (noting that the allegedly hostile actions must at least be "motivated by" a protected characteristic to sustain a hostile work environment claim).

Colon's putative constructive discharge claim does not fare any better. "A constructive discharge occurs when a discriminatory employer imposes working conditions that are so intolerable that a reasonable person in the employee's position

would have been compelled to resign." *Beltrami v. Special Couns., Inc.*, 170 F. App'x 61, 62 (11th Cir. 2006) (quoting *Fitz v. Pugmire Lincoln–Mercury, Inc.,* 348 F.3d 974, 977 (11th Cir. 2003)) (cleaned up). To meet the reasonable person standard under this test, an employee must "not assume the wors[t]" or "jump to conclusions too fast." *Id.* (quoting *Garner v. Wal–Mart Stores, Inc.,* 807 F.2d 1536, 1539 (11th Cir. 1987)). As this case law makes clear, the threshold for a constructive discharge claim "is quite high." *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1231 (11th Cir. 2001).[20]

The Eleventh Circuit's decision in *Fitz* is instructive in this regard. In that case, an employee insisted he was forced to resign because, inter alia, he was reprimanded by his employer, and he learned that management intended to fire him. *Fitz*, 348 F.3d at 977–78. After reviewing these circumstances, the Eleventh Circuit found that they did not rise to the level necessary to substantiate a constructive discharge claim. *Id.*

Applying the teachings of *Fitz* here, if facing the prospect of impending termination is not enough to establish a constructive discharge claim, then being denied multiple promotions—as Colon asserts happened to him (Doc. 59 at 13); (Doc. 1 at 6, 7)—cannot be intolerable either. Decisions issued by courts in other constructive discharge cases in this Circuit bolster this conclusion. *See*, *e.g.*, *Ratliff v.*

---

[20] The constructive discharge standard is also more difficult to satisfy than the standard for a hostile work environment claim. *See Bryant*, 575 F.3d 1281, 1298–99 ("Establishing a constructive discharge claim is a more onerous task than establishing a hostile work environment claim.") (citation omitted); *Landgraf v. USI Film Prods.,* 968 F.2d 427, 430 (5th Cir. 1992) ("To prove constructive discharge, the plaintiff must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment.") (citation omitted), *aff'd,* 511 U.S. 244 (1994).

*City of Gainesville*, 2023 WL 4771223, at *4 (N.D. Fla. June 12, 2023) (finding that a constructive discharge claim involving non-selection "does not come close" to meeting the Eleventh Circuit's requirements for such a claim) (citing *Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d 1311, 1317–18 (11th Cir. 1989)); *Atkinson v. Wiley Sanders Truck Lines, Inc.*, 45 F. Supp. 2d 1288, 1295 (M.D. Ala. 1998) (concluding that the denial of an employment opportunity did not amount to "an intolerable work situation that would compel a reasonable person to resign"), *aff'd,* 189 F.3d 486 (11th Cir. 1999).

IV.

In light of the foregoing, the Secretary's summary judgment motion (Doc. 57) is granted. The Clerk is directed to enter Judgment in the Defendant's favor, to terminate any pending motions and deadlines, and to close the case.

SO ORDERED in Tampa, Florida this 30th day of September 2026.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record